EDNA BETZ, Petitioner, Respondent, *v.* PETER HORR, Appellant.*

Second Department, March 30, 1937.

*Sidney Zimet* [*Bernard E. Perelson* with him on the brief], for the appellant.

*Arthur Bainbridge Hoff* [*Paul Windels, Corporation Counsel, Paxton Blair* and *Benjamin Rosen* with him on the brief], for the respondent.

*Affg. 160 Misc. 674.

JOHNSTON, J.   Appellant's daughter, now twenty-three years old and whose mother is dead, is suffering from pulmonary tuberculosis and is unable to maintain herself, and is likely to become a public charge.   Appellant is employed as a blacksmith and earns between twenty-one dollars and twenty-four dollars weekly.   As far as the record discloses, he has no dependents.   When the daughter was twelve years old she was adopted by her maternal grandparents. Her grandmother is dead and her grandfather is destitute and incapable of contributing to her support.   The sole question presented is: In view of the adoption, did the court have the power to make the order directing the father to contribute to his daughter's support?

The pertinent statutes are section 125 of the Public Welfare Law and section 114 of the Domestic Relations Law.   The former provides: " Liability of relatives to support.   The husband, wife, father, mother, grandparent, child or grandchild of a recipient of public relief or of a person liable to become in need of public relief shall, if of sufficient ability, be responsible for the support of such person.   Step-parents shall in like manner be responsible for the support of minor step-children."

At common law it was not only the moral obligation but the legal duty of parents to provide for the maintenance of their minor children.   There was no common-law duty requiring parents to maintain their children beyond the period of their minority even though the children were without means and unable to earn a livelihood.   While there was a moral duty to do so, the common law did not recognize or enforce it.   (*People* v. *Hill*, 163 Ill. 186; 46 N. E. 796; see, also, *Matter of Kane* v. *Necci*, 245 App. Div. 1.) The statute, however, which rests upon a prior moral obligation, imposes such a duty upon a parent if he or she is of sufficient ability and the child is the recipient of public relief or likely to become a public charge.   It may be urged, and not without reason, that where the child has been adopted the duty to support it is cast in the first instance upon the foster parents.   We may assume this to be so. But here the surviving foster parent is destitute, and the surviving natural parent is able to contribute to the daughter's support.   If he he does not do so the public must.   The object of the statute " is to protect the public from loss occasioned by neglect of a moral or natural duty imposed on individuals, and to do this by transforming the imperfect moral duty into a statutory and legal liability." (*People* v. *Hill, supra.*)   Therefore, we hold that under the statute the appellant is required to contribute to his daughter's maintenance.

Is he relieved from that liability because the daughter has been adopted?   We think not.   It is true that the Domestic Relations

Law (§ 114) provides *inter alia* that after adoption the parents are relieved " from all parental duties toward, and of all responsibility for, and have no rights over such a child, or to his property by descent or succession. \* \* \* His rights of inheritance and succession from his natural parents remain unaffected by such adoption. The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other."

The right of adoption was not embodied in the common law and, therefore, the statute permitting adoption must be strictly construed. As we read the statute, it was the legislative intent to define the relation, after adoption, of the child to its natural parents and adoptive parents, as well as to define their reciprocal rights, duties and privileges. By the adoption the natural parents had surrendered " all paternal and maternal ties to the adoptive parent pursuant to the law of the State which defined the legal rights of all of the parties and by which they were severally bound." (*Carpenter* v. *Buffalo General Electric Co.*, 213 N. Y. 101, 107.) The paternal duties mentioned in the statute, of which the natural parents are relieved, are the recognized legal obligations that flow from the relationship of parent and child. Obviously they do not include the obligation to support an adult child, for not until the enactment of the statute (Pub. Welfare Law, § 125), and then only under the conditions defined therein was a parent under a legal duty to support an adult child. In other words, it is a statutory duty based on a moral obligation which is imposed on the parent, and it must be deemed to survive the adoption of the child. Such construction is reasonable. Any other construction would be repugnant to the policy of the law. It is not to be presumed that the Legislature intended, in the event the adoptive parents died or became destitute, to relieve the natural parents of their moral obligation to support their helpless offspring and to impose that burden upon the public when the natural parents are capable of discharging it. Such construction of intention assumes that the Legislature intended to act contrary to natural law. We may not so presume, particularly when the Legislature, by the same statute, created a liability for support of strangers to the blood where, of course, no prior moral obligation exists.

The order should be affirmed, without costs.

LAZANSKY, P. J., and ADEL, J., concur; TAYLOR and CLOSE, JJ., dissent and vote to reverse the order and to grant the motion to vacate, with memorandum.

TAYLOR and CLOSE, JJ. (dissenting). Section 114 of the Domestic Relations Law provides that the effect of adoption is to relieve the natural parents from all parental duties toward, and of responsibility for, the adopted child. It is unambiguous. It relieves the natural parents from responsibility after adoption without qualification or exception. It reserves to the adopted child, as against the natural parents, the single right of inheritance or succession. Neither exceptions nor additional rights may be read into the statute by judicial legislation. (*Matter of Hering*, 196 N. Y. 218, 220; *Matter of Thomas*, 216 id. 426, 429; *Seligman* v. *Friedlander*, 199 id. 373, 380.) The " parents " charged with the duty of support after adoption, by Public Welfare Law, section 125, and Domestic Relations Court Act, section 101, subdivision 4, are the foster parents. (See *Matter of MacRae*, 189 N. Y. 142, 148, 149; *Carpenter* v. *Buffalo General Electric Co.*, 213 id. 101, 107; *Gross* v. *Gross*, 110 Misc. 278.) The relevant statutes, being in *pari materia*, are to be considered together as though forming part of the same statute. (McKinney, Statutes and Statutory Construction, § 67, p. 131, and cases cited.) Such construction leads to the exoneration of the natural parent from the liability for support.

Order denying motion to vacate an order directing a natural father to contribute to his adopted daughter's support affirmed, without costs.